19-1312 District of Nebraska, Warren Crozier et al v. Westside Community School District et al. Mr. Breckenridge, we'll recognize you first. Good afternoon, your honors. Tillman Breckenridge from the William & Mary Law School, an adjunct professor of law, just here to introduce Morgan Knudson, who will argue on behalf of the Croziers. Thank you. Very well, thank you for that. Ms. Knudson, may I proceed? Thank you, your honor. Honorable judges, and may it please the court, my name is Morgan Knudson, and I am here today on behalf of the appellants, Warren and Paula Crozier. Since 2016, then 13-year-old A.C. has been bullied, harassed, and ostracized by her classmates and her teacher, not just for what she said, but also for what she could not say. Yet, despite raising her claims under the First Amendment, which incidentally entitles A.C. to seek redress in the federal court, she has been told she has no access to justice. Then and at present, she is too young to proceed by herself. She was told her parents may not proceed pro se as her personal representative. And A.C. is not to be appointed an attorney because the District of Nebraska applied an incorrect legal standard to deny her counsel. Under the ruling set forth below, A.C. must stand by while her case loses valuable evidence because she must wait until 2022, six years after the constitutional violations occurred, to bring her claims herself. Justice delayed is justice denied. A.C. has a fundamental right to access the courts by and through her parents. As this court recognized in Clinton v. Jones, access to the courthouse is a fundamental civil liberty, and A.C., though a minor, is entitled to that right. Under the federal rules, parents must proceed on behalf of their minor children. And in Nebraska, parents have a legal duty to present and commence claims on behalf of their minor children. Yet this is at odds with the District of Nebraska's 2017 holding in Swift v. Barrett, in which the District Court not only recognized that parents may sue in their representative capacity as guardians, but also that parents may not do so pro se. But these principles are fundamentally at odds with one another. If parents are legally required to bring suit on behalf of their children, and the District believes that they have the authority to do so, indigent parents have no choice but to proceed pro se if they cannot obtain counsel. In effect, the District of Nebraska has closed the doors to the courthouse to indigent families, ensuring that violations... Let me interrupt you. You undoubtedly know the case law here. The case law is overwhelmingly against you. Why should this court depart from it? And that related question is, can we, in light of some of the Eighth Circuit opinions, we are bound by previous panel's decisions? Your Honor, we can, in this case, consider the constitutional arguments. The circuits that have addressed this matter of parents proceeding pro se on behalf of their minor children have not considered these constitutional claims under the First and Ninth Amendment of the First Amendment. So this question has not squarely been addressed by this circuit or any other circuit of record. And thus, when we are considering the constitutional claims here under the First Amendment, A.C. is entitled to access the federal courts, but has been shut out merely because her parents could not afford to obtain a lawyer for her. But this cannot be the case when parents are allowed to proceed in other cases in the pro se capacity. In particular, the Seventh Circuit in 2010 did allow an indigent mother to proceed pro se on behalf of her minor child in a 1983 suit such as this. There, the Seventh Circuit squarely recognized that the right to file pro se is not ironclad, or the inability to do so is not ironclad. And thus, here, as in the social security context, we should allow parents to proceed pro se, where the alternative is indigent children not being their constitutional rights under the First Amendment. Why do you think the Illustra case would counsel require an appointment here? I thought on the facts of that case, there was just a question whether a particular motion should be allowed by the parents pro se when counsel had represented the child before and after the motion. So it was just a minor part of the proceeding. And the rationale seemed to be that there was no risk of prejudice to the child. Isn't that a different scenario than we have here? Yes, Your Honor, it is a different scenario insofar as it was a motion to amend the judgment in that case. For the underlying principle that there, the parent, the indigent mother was not seeking to represent her child, but merely to present as a personal representative for their minor child. And here, the closures are solely seeking to act as personal representatives for AC. They're not seeking to litigate in the court, but merely trying to represent their minor child's constitutional claims. Under the Ninth Amendment, those courts have long recognized and have been hesitant to challenge parental rights. In 2000, the Supreme Court in Troxel recognized that parents have a fundamental right to make decisions regarding the care, custody, and control of their children. And that is exactly what AC's parents are doing in this case. Counsel, is that the grandparent visitation case? Is Troxel, correct me if I'm wrong? Yes, Your Honor, it is the grandparent visitation case. Well, that's an odd case for you to cite because there they let the grandparents have visitation. Yes, Your Honor, but the fundamental principle still stands that there is this right to control the child insofar as medical decisions are made, insofar as what school a child attends. So this fundamental right should not be denied absent of superseding state interest that would benefit the child. Here, if AC is not to be appointed an attorney, there is no one but her parents who can present her for her. If AC is forced to wait until 2022, she is losing valuable evidence. By that time, at the age of majority and 19, many of her classmates who were in the room that day may have graduated and be off to different schools for college or may otherwise be outside of the school district. By denying her the ability to depose or receive testimony from these individuals now, she is going to be unduly prejudiced if she must wait until 2022 to bring these claims. Is there anything in the record about efforts she's made to preserve the testimony? Of course, she doesn't have a compulsory process if there's no lawsuit, but there's nothing that would prevent her from having her friends sit in front of a video camera and record what happened. Is there anything in the record about whether that's been tried, whether that's feasible? Your Honor, there's nothing in the record to suggest that that has currently occurred. However, AC has left the school district primarily due to the bullying and harassment that she has received as a result of her treatment in the classroom. And so here, even if she can obtain videotape footage, that footage may not be available if perhaps the internet access goes out or if they lose their hard drive. And so there are complications, even with video footage, that could unduly prejudice AC in the future. Has your clinic volunteered to represent her in the district court? Your Honor, we haven't because no one in our clinic is able to practice in the state of Nebraska. And as an appellate clinic, we're not suited to represent individuals in the district court at this present time. But even more so, the district court has acted to diminish the rights of parents who are simply without the means to find counsel for their minor children, effectively ensuring that violations of a minor's rights go unanswered and closing the doors to families merely because they do not have access to financial means to obtain an attorney. And thus, even if this constitutional right, which we urge this court to consider, is not valid, under Section 1915 of the United States Code, the District of Nebraska applied the wrong standard and abused its discretion. As this court recognized in Ward-Ruby-Smith as well as Patterson, there is the avenue for this court to appoint counsel for AC, given the completeness of the record below and given the abuse of discretion by the district court. Counsel, let me interrupt you before you get too far into the argument. I realize this court has a lot of tests on this. But before we get that, there is a federal law that says, it's 28 U.S.C. 1915, one subsection of it, the court can dismiss a case at any time that determines the appeal is frivolous or fails to state a claim upon which relief may be granted. That's certainly, even with our mixed tests, doesn't that override everything? Your Honor, that would override everything if the district court relied on 1915E2 to dismiss this claim. But we are on this motion because the district court dismissed AC's claim on the basis of 1915E1, which is a necessity-based analysis for the appointment of counsel for indigent persons. And here, given it is a necessity-based analysis, the district court abused its discretion by looking at the merits of this case under 1915E1. Instead, under Patterson in 2018, this court affirmed over 30 years of precedent, suggesting that the only proper interpretation of section 1915 is a five-factor test, which includes the factual legal complexity of the issues, the ability of the indigent person both to investigate and present her claims, and the existence of conflicting testimony. And here, the matters are legally complex. Even if this is not simply a First Amendment challenge, because AC is suing her school district, there is potential qualified immunity concerns. There are concerns with Monell liability making this too complex for a minor child to investigate on her own. Even more so, the factual complexity of the issue is still paramount. There are statements to be taken from individuals, given this involves what occurred on the basis of speech. So each person will have an individual interpretation. But as a minor, AC cannot issue subpoenas on her own. She cannot go to depositions, and she cannot engage in discovery, because she is unable to do so as a minor child. And therefore, she cannot present herself. Let me interrupt you again. If you look at the district court's first order, that's the factors, attributing it to Davis, of course. But it cites the factors. And then again, in the order that we're reviewing of January 17, cites the Davis case, the same one they cited. Why don't we presume that the district court knew about those orders? I think we may have lost counsel for a moment here. So why don't we pause and see if she can reconnect? I'm sorry about that, your honor. I'm not sure what happened. We can hear you now. We can't see you, but we can hear you. So you may proceed if you heard Judge Benton's question. I did not hear your question, your honor. Would you please? Yeah, sure. That's fine. And by the way, I can see you too. But the district, and I'll sharpen it, the district court's first order of definitely lays out the factors. The second order doesn't, but it cites the same case that was cited the first time. Why don't we presume this is abuse of discretion review that the district court, of course, knew about the five factors? Your honor, the fundamental problem is the application of a different statutory context to deny AC the appointment of counsel. In the considers whether or not an employee can gain access to the appointment of counsel for a Title VII plan. By using the wrong standard, it is clearly an abuse of discretion and a use of a standard which does not have any merits in a section 1915 analysis. Hold on a second on that point, Ms. Knutson. Are you familiar with our case Johnson versus Williams from 1986? It's an appointment. Not entirely, your honor, no. Well, the salient point from it is that after listing these factors that have been repeated in later cases like Patterson, it says these factors are by no means an exclusive checklist. So query why it's inappropriate for the district court to have some inquiry into the strength of the case in determining whether counsel would be usefully appointed. Your honor, it was an abuse of discretion merely because Congress explicitly designated section 1915E1 and E2 into different provisions. E2, as you referenced, would have a basis and would have a consideration of the merits of the case in determining whether or not counsel should be appointed. But the district court only relied on 1915E1 to deny A.C. counsel. And by using an incorrect standard, though the factors may not be an end all, be all, the abuse of discretion is clear. They used a standard from a Title VII statutory context to determine the merits of the case and prevent A.C. from accessing the courthouse merely because they deemed her Well, first of all, it wouldn't be they. It would be it or the judge. But just to be clear on the Title VII point, what about the standard that he applied aside from the fact that it was cited from a Title VII case, what about it is inconsistent with what he's permitted to consider under 1915E? If he considered things that were all permissible under 1915E, in other words, why would it be an abuse of discretion even if he cited a Title VII case? Because, Your Honor, the district court did not consider these factors and relied primarily, and if not exclusively, on the underlying merits of the case, which is not consistent with this court's 30-year precedent using the five factors used in Patterson. So by denying the factors there, as the 7th, 3rd, 5th, and 11th circuits also consider to determine the appointment of counsel, the district court clearly abused its discretion by denying A.C. counsel in this case. She has already been denied access to the courts for over three years. It cannot be the case that a child must remain voiceless until the age of whether or not a parent can afford to obtain counsel for their minor children. If Your Honors have no further questions, the court would respectfully request that this court allow them to proceed as A.C.'s personal representative or to appoint A.C. counsel so she may finally seek justice. Thank you. Let me just see if the court has any further questions. Judge Wallman, do you have anything for Ms. Knutson? No, thank you. Judge Benton? None further. Very well. Thank you for your argument. The case is submitted and the court will file an opinion in due